UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DENISE R. LOZADA-RIVERA,

    Plaintiff,

    v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

_____/

Case No. 13-14663

SENIOR UNITED STATES DISTRICT
JUDGE ARTHUR J. TARNOW

MAGISTRATE JUDGE R. STEVEN
WHALEN

**ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [10] AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [11]**

Plaintiff seeks judicial review of an Administrative Law Judge (ALJ) decision that granted her application for disability benefits only through October 13, 2008. Plaintiff filed a Motion for Summary Judgment [10] on March 17, 2014. Defendant filed a Motion for Summary Judgment [11] on April 30, 2014.

For the reasons stated below, Plaintiff's Motion for Summary Judgment [10] is **GRANTED IN PART**. Defendant's Motion for Summary Judgment [11] is **DENIED**.

1

**FACTUAL BACKGROUND**

### I. Plaintiff's Treatment

Plaintiff suffered a work-related injury in August 2005 and developed a herniated disc. She underwent a lumbar laminectomy and discectomy, which relieved her symptoms only temporarily. She returned to work for a time, but has not worked since May 2007.

On August 2, 2007, Plaintiff began treatment at the Michigan Head and Spine Institute. She was initially treated primarily by Dr. Fernando G. Diaz, M.D., Ph.D. After finding that Plaintiff's condition had worsened, Dr. Diaz performed a laminectomy with radial discectomy on September 24, 2007. Dr. Diaz subsequently found that, though Plaintiff's radicular symptoms had been resolved, Plaintiff continued to complain of persistent back pain. Around January 2008, Dr. Diaz referred Plaintiff to Dr. Sophia Grias, M.D.

The earliest of Dr. Grias's notes in the record are dated January 10, 2008. Dr. Grias prescribed pain medications and made plans for Plaintiff to start physical therapy. She scheduled follow-up appointments with Plaintiff every month between January and April 2008, at six-week intervals between April and July 2008, and at eight-week intervals in August and October 2008. Her notes from this period show that, after a delayed and unproductive start to Plaintiff's physical

2

therapy program, she made plans for Plaintiff to try aquatic therapy. Her earlier notes from this period state that Plaintiff was to remain off work, but her notes from July and August 2008 make no mention of work.

Dr. Grias saw Plaintiff on October 14, 2008. She reported that Plaintiff's pain was "about the same." She noted that Plaintiff had been doing some stretches at home and riding a recumbent bike that she had obtained several months before. For the first time, Dr. Grias included a description of Plaintiff's restrictions, stating that she had "restrictions of no lifting or pulling greater than 10 lb with limited bending to 45 degrees with a sit-stand option." Dr. Grias also noted that Plaintiff had been unable to begin aquatic therapy due to menstrual issues. She scheduled follow-up in eight weeks, expressing hope that Plaintiff would start aquatic therapy soon.

Dr. Grias next saw Plaintiff on December 2, 2008. She reported that Plaintiff "never went into physical therapy." For the first time, her follow-up plans did not mention any expectation that Plaintiff would begin any form of physical therapy. Also for the first time, she did not schedule follow-up within eight weeks; she scheduled follow-up in three months instead. This follow-up appointment occurred on March 19, 2009. Dr. Grias's notes show that Plaintiff complained that

her pain had become worse. Dr. Grias planned to increase Plaintiff's pain medication after she finished her then-current prescription.

Dr. Grias continued scheduling follow-up appointments with Plaintiff every three or four months through at least August 23, 2012, the date of the last notes in the administrative record. These notes reflect periodic fluctuations in Plaintiff's condition, but no dramatic changes.

## II.   Plaintiff's Application

Plaintiff applied for disability benefits on December 5, 2007, alleging that she became disabled and unable to work on May 11, 2007. Following a hearing, ALJ Theodore Grippo denied Plaintiff's application on March 24, 2010. On April 25, 2011, Plaintiff sought judicial review of ALJ Grippo's decision in this Court.[1] On December 22, 2011, Defendant filed a motion to remand the case for a second hearing on Plaintiff's application. The Court remanded the case the same day.

Meanwhile, Plaintiff had filed a second application for disability benefits on June 28, 2011. On remand, Plaintiff's first application was consolidated with the second and assigned to ALJ Martha Gasparovich. The ALJ held a hearing on November 16, 2012. Plaintiff testified, *inter alia*, that she needs to take a several-minute break every ten to fifteen minutes when sitting to do bills; that she would

---

[1] Plaintiff's first request for judicial review was assigned to the Honorable Mark A. Goldsmith.

4

probably become delirious from lack of sleep if she could not take a nap for a couple of hours every day; and that she has an especially bad day once every two weeks or so, during which she cannot walk without assistance.

On December 20, 2012, the ALJ issued a decision finding that Plaintiff had been disabled for the closed period of May 11, 2007, through October 13, 2008. Specifically, the ALJ found that prior to October 14, 2008, Plaintiff's residual functional capacity (RFC) included a requirement that she "take unscheduled breaks at least once a day for a period of at least 30-45 minutes." The ALJ found that as of October 14, 2008, Plaintiff had experienced medical improvement eliminating this requirement. Relying on the testimony of a vocational expert, the ALJ concluded that Plaintiff's impairments prevented her from engaging in substantial gainful activity only during the period when she required unscheduled breaks—that is, from May 11, 2007, through October 13, 2008.

Plaintiff's exceptions to the ALJ's decision were denied by the Appeals Council on December 6, 2013. On November 10, 2013, Plaintiff again filed for judicial review in this Court.[2]

---

[2] This matter was referred to Magistrate Judge R. Steven Whalen on November 12, 2013. The Court entered an Order [12] vacating the referral on October 21, 2014.

## STANDARD OF REVIEW

Judicial review of a decision by an ALJ is limited to determining whether the factual findings are supported by substantial evidence and whether the ALJ employed the proper legal standards. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The ALJ's factual findings "are conclusive if supported by substantial evidence." *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 243 (6th Cir. 1987). "Substantial evidence is defined as more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). So long as the ALJ's conclusion is supported by substantial evidence, a court must "defer to that finding even if there is substantial evidence in the record that would have supported an opposite conclusion." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *see also Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986). However, he substantial evidence standard "does not permit a selective reading of the record," as the reviewing court's assessment of the evidence supporting the ALJ's findings "must take into account whatever in the record fairly detracts from its weight." *McLean v. Comm'r of Soc. Sec.*, 360 F. Supp. 2d 864, 869 (E.D. Mich. 2005) (quoting *Garner v. Heckler,* 745 F.2d 383, 388 (6th Cir. 1984)).

## ANALYSIS

Plaintiff challenges the ALJ's finding that she was no longer disabled as of October 14, 2008, due to medical improvement. Defendant bears the burden of proving a medical improvement sufficient to terminate disability benefits. *Campbell v. Comm'r of Soc. Sec.*, No. 10-13098, 2011 WL 2160460, at *4 (E.D. Mich. June 1, 2011) (unpublished) (Duggan, J.) (citing *Kennedy v. Astrue*, 247 Fed. App'x 761, 765 (6th Cir. Sept. 7, 2007) (unpublished)).[3]

To discontinue a claimant's disability benefits on the basis of medical improvement, an ALJ must determine that the claimant experienced a decrease in the medical severity of her impairments that resulted in an increase in her functional capacity to do basic work activities. 20 C.F.R. §§ 404.1594(b)(1), (b)(2). This determination must be based on changes in "the symptoms, signs and/or laboratory findings associated with [the claimant's] impairment(s)." *Id.* §§ 404.1594(b)(1), (c)(2). As defined in the regulations, "symptoms" refers to the

---

[3] This is a "closed period" disability case. "[I]n a closed period case, the [ALJ] determines that a new applicant for disability benefits was disabled for a finite period of time which started and stopped prior to the date of his decision …." *Campbell*, 2011 WL 2160460, at *4 n.4 (quoting *Waters v. Barnhart,* 276 F.3d 716, 719 (5th Cir.2002)). A closed period case is distinct from a termination-of-benefits case, in which the ALJ determines whether a claimant found disabled in a *prior* decision has since lost her entitlement to the continued receipt of benefits. *See id.* The same medical improvement standard applies in closed period cases and termination-of-benefits cases. *Id.*

7

claimant's own description of her impairments. *Id.* § 404.1528(a). "Signs" refers to "anatomical, physiological, or psychological abnormalities … shown by medically acceptable clinical diagnostic techniques." *Id.* § 404.1528(b).

Here, the ALJ found that Plaintiff's RFC for the closed period of disability included a requirement that she "take unscheduled breaks at least once a day for a period of at least 30-45 minutes." Although the majority of the RFC was adopted from Dr. Grias's October 14, 2008 description of Plaintiff's restrictions, the unscheduled-break restriction was not. The ALJ determined that "the circumstantial evidence" justified the inclusion of this "additional limitation attributable to [Plaintiff's] subjective allegations …." However, the ALJ found that as of October 14, 2008, Plaintiff's subjective allegations were no longer credible to the extent that they were inconsistent with a new RFC—identical except for the removal of the unscheduled-break restriction. In support, the ALJ stated that Plaintiff's visits at the Michigan Head and Spine Institute decreased in frequency around this period, from one-month to four-month intervals.[4] The ALJ further noted evidence of improved functionality around October 14, 2008: Dr. Grias's notes from that date reported that Plaintiff had begun stretching at home

---

[4] The ALJ overstated the change in frequency. In reality, Plaintiff's appointments were scheduled at four-, six-, and eight-week intervals before October 14, 2008, and then transitioned to three- or four-month (twelve- or sixteen-week) intervals.

and using a rehabilitative bike, and Plaintiff reported at her next appointment that she believed she was getting stronger. The ALJ stated, without elaboration, that Dr. Grias's later notes "relay a general trend of improved functionality." Finally, the ALJ noted that Dr. Grias first described Plaintiff's restrictions on October 14, 2008. The ALJ apparently interpreted the identification of restrictions as evidence of improvement because earlier notes had suggested Plaintiff remain off work.

The Court holds that the ALJ failed to comply with Social Security Agency regulations in finding that Plaintiff experienced medical improvement as of October 14, 2008. In Defendant's own words, the ALJ's medical improvement finding "relied primarily on the [decreased] frequency of [Plaintiff's] visits at the Michigan Head and Spine Clinic … after October 13, 2008." A change in the frequency of follow-up appointments with a medical provider is not a change in a claimant's description of her symptoms, a change in "abnormalities" shown by clinical diagnostic techniques, or a change in laboratory findings. It is therefore not an appropriate foundation for a finding of medical improvement. *See* 20 C.F.R. §§ 404.1528; 404.1594(b)(1), (c)(2).[5]

---

[5] Its probative value is also questionable. The decreased frequency of follow-up appointments may be explained by reasons unrelated to the severity of Plaintiff's impairments, such as Dr. Grias's growing familiarity with the stability of Plaintiff's symptoms. Notably, the change to three- or four-month intervals occurred as soon as it became clear that Plaintiff would not start physical therapy.

Even if the ALJ's medical improvement finding had relied on appropriate evidence, it would have violated Social Security Ruling 96-7p. The ALJ's medical improvement finding boils down to an assessment of Plaintiff's credibility: the ALJ found that Plaintiff's subjective allegations were sufficiently credible to support the unscheduled-break restriction through October 13, 2008, but not after. Social Security Ruling 96-7p requires an ALJ to provide an explanation of her credibility determinations "sufficiently specific to make clear to the [claimant] and to any subsequent reviewers the weight the adjudicator gave to the [claimant's] statements and the reasons for that weight." Soc. Sec. Ruling 96-7p, 1996 WL 374186, at *2. In the Sixth Circuit's words, "blanket assertions that the claimant is not believable will not pass muster, nor will explanations as to credibility which are not consistent with the entire record and the weight of the relevant evidence." *Rogers*, 486 F.3d at 248.

The ALJ's decision provides an inadequate explanation for her reassessment of Plaintiffs' credibility regarding her need for unscheduled breaks. This is in part due to the vagueness of the ALJ's initial credibility finding, which cites only "the circumstantial evidence" as support for inclusion of the unscheduled-breaks restriction prior to October 14, 2008. The ALJ fails to explain how the circumstantial evidence following that date differs with respect to the need for

10

unscheduled breaks. The ALJ specifically cites references to Plaintiff's improved strength, including her use of a rehabilitative bicycle and her initiation of a stretching program. This evidence, however, seems mostly—if not solely—relevant to Plaintiff's capacity for short bursts of exertion, as opposed to her capacity to endure an entire workday without an unscheduled break. The ALJ also points out that Dr. Grias first identified restrictions for Plaintiff on October 14, 2008, suggesting that Dr. Grias no longer believed Plaintiff needed to remain off work. The mere suggestion that Plaintiff's capacity for work had changed, without any contemporaneous or prior discussion of Plaintiff's need for unscheduled breaks, is not sufficient support for the conclusion that *this need* had changed.[6] Likewise, the "general trend of improved functionality" allegedly relayed by Dr. Grias's later notes is simply too general to support a credibility determination regarding a specific restriction.[7]

---

[6] This is particularly true given that the October 14, 2008 notes indicate that Plaintiff's pain was "about the same." Indeed, two appointments later, Plaintiff reported that her pain had increased, and Dr. Grias accordingly decided to increase Plaintiff's pain medication.

[7] The Court also questions the evidentiary support for this trend of improved functionality. Indeed, Defendant seems to concede that Dr. Grias's later notes reflect little change: "[Plaintiff] has cited to some recent reports that Dr. Grias submitted that date from 2010 and 2011. These reports, however, are very similar to the reports from Dr. Grias that pre-date October 2008."

The Court therefore concludes that the ALJ failed to follow Social Security Agency regulations in finding that Plaintiff had experienced medical improvement rendering her non-disabled as of October 14, 2008. Plaintiff asks the Court to remand for an award of benefits. However, a district court may reverse a decision of the Commissioner of Social Security and immediately award benefits "only if all essential factual issues have been resolved and the record adequately establishes [the claimant's] entitlement to benefits." *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994). The Court finds that a factual issue remains regarding whether Plaintiff experienced medical improvement rendering her non-disabled at any time after October 13, 2008. The Court will therefore remand to the ALJ for a new decision on this issue, employing the proper legal standards.

## SANCTIONS

Plaintiff's counsel, Richard Doud, "has developed a reputation in this District for submitting briefs on behalf of social security claimants that are thoroughly deficient and devoid of proper factual substance and legal analysis." *Sadler v. Comm'r of Soc. Sec.*, No. 13-13552, 2014 WL 4724767, at *6 (E.D. Mich. Sept. 23, 2014) (Parker, J.) (citing *Fielder v. Comm'r of Soc. Sec.*, No. 13–10325, 2014 WL 1207865, at *1 & n.1 (E.D. Mich. Mar. 24, 2014)). Mr. Doud's

12

brief in this case is further evidence of his "superficial, cut-and-paste, template approach to fulfilling his professional duty to substantively brief the issues presented …." *Pawloski v. Comm'r of Soc. Sec.*, No. 13-11445, 2014 WL 3767836, at *6 (E.D. Mich. July 31, 2014) (Cleland, J.).

    A mere week after Mr. Doud filed his brief on Plaintiff's behalf, Chief Judge Rosen issued an opinion warning Mr. Doud that he would face sanctions and possible referral for disciplinary proceedings if his future submissions failed to demonstrate a renewed commitment to professional competence. *See Fielder*, 2014 WL 1207865, at *1 n.1. Mr. Doud seems to have filed similarly deficient briefs in this District even after Chief Judge Rosen's warning. *Villareal v. Comm'r of Soc. Sec.*, No. 13-CV-15197, 2014 WL 6750327, at *5 (E.D. Mich. Nov. 30, 2014) (Battani, J.) (adopting Report & Recommendation (Grand, M.J.)); *Barber-Woodley v. Comm'r of Soc. Sec.*, No. 13-14502, 2014 WL 6986273, at *5 (E.D. Mich. Dec. 10, 2014) (Cohn, J.) (adopting Report & Recommendation (Grand, M.J.)). If he does so in this Court, he will be ordered to explain why he should not be sanctioned. However, since his deficient submission in this case preceded Chief Judge Rosen's warning, the Court will not impose sanctions at this time.

## CONCLUSION

For the reasons stated above,

**IT IS ORDERED** that Plaintiff's Motion for Summary Judgment [10] is **GRANTED IN PART**. The Court remands this case to the ALJ for a new decision regarding whether Plaintiff experienced medical improvement rendering her non-disabled at any time after October 13, 2008.

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment [11] is **DENIED**.

**SO ORDERED**.

                                        s/Arthur J. Tarnow
                                        Arthur J. Tarnow
Dated: January 28, 2015                 Senior United States District Judge